# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELANIE G. STAMBAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-10-448-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Melanie G. Stambaugh requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on September 21, 1964, and she was forty-five years old at the time of the administrative hearing. She has an eighth grade education but did obtain her GED. (Tr. 214). She has past relevant work as a data processor, electronics assembler, equipment inspector, and receptionist. (Tr. 16). The claimant alleges she has been unable to work since June 1, 2005 because of bipolar disorder, adult attention deficit disorder, social phobia, obsessive compulsive disorder, and post-traumatic stress disorder (Tr. 121).

**Procedural History**

On December 4, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Jon Volz conducted a hearing and determined that the claimant was not disabled in a decision dated March 9, 2010. The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (chronic dysthymia, personality disorder, NOS with passive aggressive tendencies, and social anxiety disorder) but retained the residual functional capacity ("RFC") to perform work at all exertional levels but with the nonexertional limitation that claimant must have no repetitive contact with the general public (Tr. 12, 14). The ALJ concluded that while the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, janitor and hand packer (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze her credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the claimant's credibility.

On May 5, 2005, claimant began receiving mental health treatment from David L. McElwain, M.D. (Tr. 214). During her initial interview, Dr. McElwain noted that claimant "has had a life, really, of disorganization," citing that claimant had quit school at 15, "had probably 60 different jobs since then," and "stopped therapy and treatment for a variety of psychiatric complaints many times." (Tr. 214). Claimant reported sleep problems and diminished appetite, and she told Dr. McElwain that she was being financially supported by two different men. (Tr. 215). Dr. McElwain performed a Mental Status Exam, and noted that claimant displayed a very poor memory, poor

attention and concentration, distractedness, below average intelligence, and fairly impaired judgment. (Tr. 215). Claimant was diagnosed with attention-deficit disorder without hyperactivity, social anxiety disorder, dysthmia, and probable borderline intellectual functioning (Tr. 215). Further, Dr. McElwain concluded that claimant's GAF score at that time was somewhere between 30 and 34 (Tr. 215). At her next appointment one month later, claimant reported intolerance of one of the medications she had been given (Strattera), and Dr. McElwain noted that claimant "has been very sensitive to other kinds of medicines in the past" (Tr. 213). Dr. McElwain continued to treat claimant through at least January 26, 2007, adjusting her medication regularly. At her last appointment with Dr. McElwain, he noted that claimant was obsessed with her breast size, picking her skin, germs, and lotion, exhibited paranoia and reported "spider and bugs in [her] mind" (Tr. 209). Dr. McElwain submitted a hand-written note on October 3, 2005, in which he wrote that claimant "has been unable to maintain consistent schooling and employment due to her symptoms, mainly due to the ADD" and that while claimant was "showing some improvement in the past few months" it was his opinion that she was disabled. (Tr. 171).

On January 15, 2009, claimant was examined by state physician Dr. B. Todd Graybill, Ph.D. (Tr. 227-29). Dr. Graybill wrote that claimant reported having trouble with socializing, having good attendance, and dealing with different personalities on the job" (Tr. 227). She reported four prior attempts to start her own business, each time failing, and that she "has severe insomnia and feels dysfunctional during the day" (Tr.

227). Dr. Graybill noted that claimant has a failure complex, low energy, and some negative thoughts (Tr. 227). Further, the claimant reported receiving treatment in the past for major depression, bipolar disorder, stage fright/social phobia, and ADD (Tr. 227). Dr. Graybill also noted that the claimant reported that she was not taking psychotropic medications because she was unable to afford medication (Tr. 228). Dr. Graybill performed a Mental Status Exam and found claimant was "resentful, sarcastic, and negative in her manner" but has rational and coherent speech and thought processes (Tr. 228). Claimant exhibited a depressed mood but no indications of hallucinations or delusions (Tr. 229). Further. Dr. Graybill estimated her intellectual abilities in the high average range (Tr. 229). Diagnostic impression at that time was chronic dysthymia and personality disorder, NOS with passive aggressive tendencies (Tr. 229).

State reviewing physician W. Miller Logan, M.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on February 17, 2009 (Tr. 241-58). Like Dr. Graybill, Dr. Logan found that claimant suffered from dysthymia and personality disorder, NOS with passive aggressive tendencies (Tr. 244, 248). With regard to degree of limitation, Dr. Logan found claimant was mildly restricted in her activities of daily living, but moderately limited in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 251). Elaborating further, Dr. Logan noted claimant was moderately limited in the following areas: (i) ability to maintain attention and concentration for extended periods; (ii) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iii)

ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (iv) ability to interact appropriately with the general public; (v) ability to accept instructions and respond appropriately to criticism from supervisors; and (vi) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 255-56). His written notes in the Functional Capacity Assessment section reflect that claimant "retain[ed] the capacity to perform detailed but not complex work related tasks in a routine work setting" (Tr. 257).

The claimant presented at Green Country Behavioral Health Services on September 9, 2009 for an initial interview and assessment (Tr. 270-77). During that initial interview, claimant was noted to have problems with depression, anxiety, anger, nightmares, insomnia, and paranoia (Tr. 270, 272). Claimant reported that her history included two marriages and past physical abuse at the hands of her father (Tr. 272). Claimant's GAF score was assessed to be 46 at this time, and she was deemed a "moderate complexity" case (Tr. 269, 272).

The claimant testified at the administrative hearing that an altercation between her stepfather and mother in which her stepfather beat her mother so badly that he almost killed her caused her to have PTSD (Tr. 37). The claimant testified that both her parents were alcoholics, her stepfather was abusive, and she had to quit school when she was 15 years old to help the family make ends meet (Tr. 45). The claimant testified that she had problems with attendance at previous jobs, and stated that there was "always something

wrong at home and [she's] always doubting [herself] and the work was too hard" (Tr. 29).

The claimant contends that the ALJ failed to properly analyze her credibility with regard to the limiting nature of her condition. A credibility determination is entitled to deference unless there is an indication the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The court agrees with the claimant that the ALJ's credibility analysis was legally insufficient. The ALJ's credibility analysis here was the following: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15). The problem with this analysis (apart from

vagueness) is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines and *then* formulated an appropriate RFC, not the other way around, *i. e.*, the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC. *See McFerran v. Astrue*, 2011 WL 3648222, *2-*3 (10th Cir. Aug. 19, 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' . . . The ALJ's errors in the credibility assessment necessarily affect the RFC determination. 'Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.'"), [unpublished opinion], *quoting Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). The ALJ compounded this error in two ways: (i) the ALJ faulted claimant for failing to follow through with medical treatment *despite* evidence in the record that claimant was unable to afford treatment, *see Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay for recommended treatment may justify the failure to follow the treatment); and (ii) the ALJ failed to even *mention*, let alone evaluate, the "other source" evidence submitted by the claimant, *i. e.*, the "Adult Third Party Function Report" completed by claimant's friend, which corroborated many of the claimant's statements regarding the effects of her impairments, s*ee* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *2 ("In addition to evidence from 'acceptable medical

sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to . . . Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.").

In addition to the deficient credibility analysis, the ALJ erred by failing to evaluate the opinion provided by claimant's psychiatrist, Dr. McElwain, who wrote an opinion letter which reflected a diagnosis of ADD, depression, and social anxiety disorder (Tr. 171). The ALJ apparently ignored Dr. McElwain's opinion letter (and his diagnosis of ADD, as exhibited in his opinion by his reference to claimant's "alleged" ADD), despite the fact that he had treated claimant from May 2005 through at least January 2007. On remand, the ALJ should discuss whether Dr. McElwain qualifies as a treating physician, *see Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (In order for a treating physician relationship to exist, the physician must have "seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment[.]'"), *quotin*g 20 C.F.R. § 416.927(d)(2)(i), (ii), and then evaluate Dr. McElwain's opinion letter in accordance with applicable regulations, including, *inter alia*, 20 C.F.R. §§ 404.1567; 416.927.

Because the ALJ failed to properly analyze the claimant's credibility, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ

should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma